Anderson, J.,
delivered the opinion of the court.
This is a suit by Charles W. Hoffman against William B. Walters, John Carr, Snowden C. Hall, John H. Downing, John Jett and P. G-. Kenny to ascertain and remove incumbrances from a tract of land which the plaintiff had sold to said Kenny; to that end to *445 convene the judgment creditors of Thomas S. Hall, a former owner of the land, to enjoin the sale thereof by W. B. Walters, trustee under a deed of trust; in a word, to clear the title of the said Hoffman, and to enforce the execution of the contract of sale and purchase which he had made with the said Kenny.
It appears that Mr. Kenny was a citizen of the state of New Jersey, and wishing to transfer his domicil to the state of Virginia, came to Fauquier county about August, 1868, to purchase a farm as a home for himself and family, with the intention, if he purchased, to plant vines and fruit trees the ensuing fall. He was in treaty with a Mr. Marshall for a farm in Fauquier county, which Marshall declined to sell until he could consult the owner, who was absent in Europe. The appellee, C. W. Hoffman, being aware of it, called on Mr. Kenny and offered to sell him an adjoining farm, known as Linden, which contains 585 acres and a fraction, and informed him, as testified by Kenny, that he could give him possession, and a deed for it, in a week or ten days, and that there was only one claim on it, a debt due Mr. Carr. They made a verbal contract for the sale and purchase of said tract of land, as is further testified by said Kenny, at the price of $25 an acre, $600 -of which Kenny paid in hand; and Hoffman left the same day for Alexandria, and promised to put the papers in the hands of Col. John S. Mosby the following Monday to prepare the deed. Three days after, the paper marked C, and exhibited-with plaintiff’s bill, evidencing the contract, he says was handed to him by his son, and was signed by him without much examination. It bears date the 10th of August, 1868, and purports to be a sale to Kenny by Hoffman of the tract of land in controversy, and. stipulates that immediate possession shall be given, except of- certain parcels mentioned, *446 possession of which should be given on the 1st of January, 1869, Kenny to pay the whole of the purchase-money as soon as he got a clear title. Iloffman returned to Linden after a week’s absence, and stated that he had not left the papers with Col. Mosby because of their being some other claims on the land, which had been paid, but satisfaction of them not entered ; that the following Tuesday-week court would sit in 'Warrenton, and he would have all the claims settled and put the papers in Col. Mosby’s hands. Kenny then returned home to make arrangements for moving his family to the farm he supposed he had purchased in Fauquier county, Virginia. There is no conflict with the foregoing statement of the case unless there is in the deposition of C. W. Hoffman in relation to his representation as to the incumbrances on the land, which we will notice hereafter. Mr. Kenny, learning that the land was greatly incumbered with uncertain amounts; that a cloud was resting upon the title; that suits were depending to subject it to the liens of judgments and deeds of trust for uncertain amounts; that the land had been advertised to be sold under a deed of trust; and that he could not get possession under a clear title in time to plant vines and fruit trees, which seems to have been regarded by him in making the purchase as an object of great importance, notified the said Hoffman that he would not proceed with the purchase, and demanded a return to him of the money ($600) which he had advanced upon it.
The record shows that the bill in this suit was filed on the 28th of December, 1868, and C. W. Hoffman testifies that he made and tendered to Col. John S. Mosby, the agent or counsel of P. Gr. Kenny, the deed which is filed as an exhibit with the bill on the last day of December, 1868, and that he refused to accept *447 or receive it. Ought he to have received it? Did the deed tendered convey to him a clear title,'such as the contract obliged O. W. Hoffman to make ? Was • it.in time ? It is very evident that time was an important element in the question of purchase hy Kenny. His purpose was to move his family, if he purchased, to their new home without delay. It was important that he should get possession in time to prepare the ground for planting vines and fruit trees. If he failed in it he would be postponed a year in planting, which would he a serious loss. For this reason it seems he gave up the purchase of the farm he wanted rather than wait until the owner, who was then in Europe, could he consulted, and entertained the proposition of O. ~W. Hoffman, who told him he could give him possession and make him a deed in a week or ten days. Doubtless Mr. Hoffman was aware of this when he gave him that assurance. He testifies: “Early possession was a necessary element in any contract I would make, as I would not otherwise have purchased any place, my object being to put the land in such condition as that it could he planted in vines and fruit that fall.” And again: “I fully believed, from what Hoffman told me, that he could give me a deed for his property, vesting a clear title in me, in a week or ten days; otherwise I would have had nothing to do with the property.” He was a stranger in the country, had made no investigation of the title, and had had no access to its records, hut testifies that in making the contract he relied alone on the representations of Hoffman. In the foregoing statements he is not contradicted hy Hoffman or any other witness.
But if possession was so important, why did he not take it ? It was tendered to him according to the terms of the written contract. Mr. Hoffman says he did take possession, and employed his son to plow the land for *448 him, and employed an agent to take charge of the place f°r Am. About this they differ, and neither the son nor agent, nor the witness to the contract are introduced by Mr. Hoffman to testify. But that does not seem to m Aerial, as it is admitted by Kenny that possession was tendered. Was it his duty under the contract to take part possession then, or full possession when it would have been given, on the 1st of January following ? lie was under no obligation to take possession until he got a clear title. Possession, without a title, would have been no advantage to him. If he had taken possession and moved his family, to the place, and expended money and labor in the improvements he contemplated, apd the seller was unable to make him a title, his labor and expenditures would have all been lost; his time would have been wasted, and others would have enjoyed the fruits of his labor and expenditures. Under the circumstances, we think it was prudent and judicious in him, and not in conflict with the rights of any one, not to proceed with the contract until a clear title was secured to him, and consequently his vendor had no right to complain it he refused to take possession until he was made sure of his title. Before Mr. Hoffman left for Alexandria, he informed him that there was but one claim on the land— a debt due to John Carr, which, of course, he expected to be arranged, as he told him he wonld put the papers in the hands of Col. John S. Mosby to prepare a deed, and could give him possession and convey him a good title in a week or ten days. On his return, a week after-wards, he informed him that he had not left the papers in Col. Mosby’s hands, because he had ascertained there were other claims on the land, which, however, he informed him had been paid; but that he would have the claims all settled at the next court at Warrenton, which would sit the next Tuesday week, and put the papers in the hands of Col. Mosby. Mr.- Hoffman had not told *449 him all, but he told him enough to justify him in declining to take possession, and in deciding not to proceed further with the contract until he got a clear title. And he wrote to Col. Mosby requesting him to see that Mr. Hoffman made him a good title, and soon after returned to his home in New Jersey.
C. W. Hoffman, whose deposition is in the record, does not contradict any of the foregoing statements. But in answer to the eleventh question of his counsel, Have you or not tendered to said Kenny a deed, with general warranty ? ” &e., said, “ I made such a deed and tendered it to the agent or counsel of Mr. Kenny on the last day of December, 1868, which said deed is filed with the hill in said cause, and is marked exhibit-with hill.” By an inspection of the deed, it will be seen that it contained no.general warranty, but only conveys the legal and equitable interest of the grantors in said land and all others claiming by or through them. He further says, “I have complied on my part with all the covenants and agreements specified in the written contract referred to.” That is matter of opinion. We construe the written contract-as requiring a conveyance not only with general warranty, but free from incumbrance, “ a clear title.” But he adds, “ the items of the contract are specially set forth (Where ?) stating that the liens were to he paid but of the money received for the land.” We find no such specifications in the written contract; and they are not in the deed filed as “ exhibit-with bill.” The witness is evidently mistaken. In answer to twelfth question by same: “ When the contract for sale was made with Kenny, was he or not informed that your title to this land was incumbered?” lie answers to that part of the question: “Mr. Kenny, at the time of our contract, was informed that the land was incumbered.” It is admitted, as we have seen, by Kenny, that he was informed that there *450 was one incumbrance on it, and that was only one claim; The answer does not thus far conflict with this. ]3ut in ■ answer to the latter part of the question, “Was or was not the understanding between you that he should take the land subject to its incumbrances, but see that the purchase-money should be applied to the discharge of said incumbrances according to their priorities ” ? he says: “The understanding was as you have stated, and was so explained to the witnesses to the contract.” Yet no witness to the contract has been examined to prove such an understanding. It is directly in conflict with the testimony of P. Gr. Kenny, and is contradicted by the written contract; and is excepted to by the defendant Kenny as illegal testimony; and was clearly inadmissible, and ought to have been excluded.
Was the tender of the deed on the last day of December, 1868, or the offer to make a deed prior thereto, such a compliance with the contract on his part as entitled him to a decree for specific performance ? We have seen that the deed tendered was not such a conveyance as the defendant Kenny was entitled to receive. Does the bill and record of this suit make a case which would warrant a court of equity, in the exercise of a sound discretion, to enforce the specific performance against the defendant P. Gr. Kenny ?
The bill shows upon its face that clouds were resting upon the plaintiff’s title from deeds of trust, upon one bf which the amount of the debt secured was disputed and in litigation, and from unascertained judgment liens, for the enforcement of which a suit was depending, and that the land was advertised to be sold under one of the said deeds of trust. Under these circumstances, was it incumbent on the defendant to proceed with the contract ? Was it incumbent on him to move his family from a a distant state to Virginia, and accept of a conveyance to a tract of land which was shingled over with deeds of *451 trust and unascertained judgment liens to an unknown amount—-to accept the possession of the farm which he had purchased for a home, with the promise of a clear title, with the view of planting it in vines and fruit trees during the ensuing season, after the season for planting was passed, and which was thus incumbered, and then actually involved in suits ?
“A court of equity is anxious to protect a purchaser and give to him reasonable security for his title; not compelling him to take a title, not knowing whether it is good or bad.” 1 Sugd. Vend., top p. 577, ch. 10, § 3, art. 1. In Garnett v. Macon & als., 2 Brock. R. 185, 244, Chief Justice Marshall said: “Both on principle and authority, I think it is very clear that a specific performance will not be decreed on the application of the vendor unless his ability to make such a title as he agreed to make be unquestionable.” “This objection is not confined to cases of doubtful title. It applies to incumbrances of every description, which may in any manner embarrass the purchaser in the full and quiet enjoyment •of his purchase.” Those citations of authority are made with appi’oval in Hendricks & als. v. Gillispie, 25 Gratt. 181. The doctrine on this subject is very fully stated by Judge Staples, and authorities reviewed, in Christian v. Cabell, 22 Gratt. 82.
It cannot he doubted that the difficulties hereinbefore stated “presented to the mind of a prudent man (as remarked by Chief Justice Marshall in Garnett v. Macon, 6 Call, 309, 367, and cited by Judge Staples in the case supra) contemplating 'the purchase of an estate, and desirous of performing his contract according to its terms, might have serious influence on his conduct, and might deter him from making the purchase. If informed of them after making the contract, but before its execution by the paying of the purchase-money and receiving a conveyance, he would have such strong motives for *452 stopping entirely, or at least for pausing until the impediments could be removed, as would, I think, justify him for so doing in the opinion of any reasonable mar.”' Ho one can suppose that the appellant would have made this purchase if he had known the condition of the title-He might well refuse to complete the purchase after he was apprised that it was incumbered with deeds of trust and judgment liens of unknown amounts, liable at any time to be sold, the very possession of which might involve him in vexatious and expensive law suits.
Specific performance will, only be decreed as matter of favor, when the vendor is not prepared to comply with his covenants until the hearing, and such favor will only be granted in cases where it can be granted without .prejudice to the rights of the vendee. This indulgence will not be granted when the defect to be remedied was known to the vendor or his attorney at the time of the contract, and was concealed from the purchaser. “And more especially will such indulgence be-denied when, besides a failure to disclose the existence of incumbrances, an account is necessary to ascertain the state of the title, the extent, nature and amount of such incumbrances.” (Christian v. Cabell, supra, pp. 103-4.) Judge Staples said, in delivering the opinion, in which the whole court concurred: “I have-seen no case in which it has been held that a purchaser has been required to wait the institution of a suit and the settlement of contested accounts between third persons..to afford the vendor an opportunity of removing incumbrances and perfecting his title.”
After Kenny ascertained that he could not get a clear title to the land; that it wras covered with judgment and deed-of-trust liens of unknown amounts, and that suits were depending to enforce some of them, and the land had been advertised to be sold under one of the deeds of trust, and a-cloud was resting upon the title which he *453 could not see how or when it would be removed, if ever, it was certain not in time for him to get possession for the purpose which seems to have been his leading design in contemplating the purchase, and that to proceed with the contract would involve him in an expensive and annoying chancery suit, the result of which he could not foresee, he prudently resolved not to go on with the purchase, and refused to accept a deed which did not convey him a clear title, notified Hoffman that the contract was ended, and demanded the return of the $600 he had advanced upon it. Long after this, Hoffman brought this suit against third parties for an account, to clear his title and to enjoin the sale of the land under one of the deeds of trust, and, against said Kenny, to enforce specific performance of his contract, and tendered him a deed which only conveys, without general warranty, all the legal and equitable interest of his wife and himself in the land in controversj’, which was tendered to Kenny’s attorney, and which he refused to accept. And after a litigation of two years in the endeavor to clear the title, the decree which is appealed from was pronounced, holding Kenny to the specific performance and requiring him to pay within thirty days the sum of $14,635.32 to a special commissioner; upon the payment whereof the commissioner was to deliver to him the deed aforesaid, and upon failure to pay the land was to be sold and proceeds applied to the payment thereof.
It does not appear, even after two years’ litigation, that the plaintiff at the hearing had removed all the impediments to the execution of the contract on his part,' or that it was in his power then to make the appellant a clear title. There still remained, as shown by the commissioner’s reports, a considerable amount of judgment liens on that part of the tract which lies in the county of Kauquier, besides a large debt due John Carr, which was secured by deed of trust, the amount of which was un *454 certain and disputed until settled by this decree. The commissioner in his last report, which seems to be the basis of the decree, states that a part of the tract lies in "Warren county, and that there are a number of judgments unsatisfied, obtained in the courts of said county, some of which are upon the lien docket, and some not, and that the deed of trust from Hall to Hall has never been recorded in that county, nor the deed from Hall to Hoffman; and that a suit in chancery is depending in the circuit court of Wrarren to subject that portion of the land which lies in that county to the satisfaction of said judgments. The number and amount of said judgments are not ascertained and determined by this suit, though they are evidently a lien upon a part of the land which Hoffman sold to Kenny. But we are of opinion, if all the impediments had been removed at the hearing of this cause to the conveyance of a good title by Hoffman to Kenny that, under the circumstances of this case as hereinbefore detailed, both upon principle and authority, it would be inequitable to enforce the specific execution of the contract against the appellant. "We are of opinion, therefore, to reverse the decree of the circuit court with costs.
The decree was as follows:,
The court is of opinion, for reasons stated in writing and filed with the record, that the appellee, O. "W. Hoffman, is not entitled to a specific performance of the contract in question, upon the case made by the record; and that the court below erred in decreeing against the appellant the specific performance of said contract instead of its rescission. It is therefore ordered and decreed that the said decree of the circuit court of Fauquier county be reversed and annulled, and that the appellee, Charles "W. Hoffman, do pay to the appellant his costs expended *455 in the prosecution of his appeal here. And this court proceeding to render, such decree as ought to have been rendered by the court below, it is adjudged, ordered and decreed that the appellee, Charles "W. Hoffman, do pay to the appellant, P. G. Kenny, the sum of $600, the money he had advanced him on the purchase of the land in controversy, with interest thereon from the 10th day of August, 1868, at the rate of six per centum per annum until payment, and his costs expended in the defence of this suit in the said circuit court; and if the said sum of $600, with interest as aforesaid, be not be paid within ninety days from this date, that the said Kenny have liberty to apply to the said court, by petition in this cause, for such order as may be necessary and proper to subject the said land or the rents and profits to the payment thereof.
Decree reversed.